KING & SPALDING LLP
Richard T. Marooney
Viren Mascarenhas
1185 Avenue of the Americas
New York, NY 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

*Attorneys for Petitioner*
*Bloomfield Investment Resources Corp.*



RECEIVED
JUL 22 2015
CASHIER'S OFFICE
S.D.N.Y.

**15 MISC 220**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of Bloomfield Investment Resources Corp. for an Order Directing Discovery from Elliot Daniloff, ED Capital, LLC and ED Capital Management, LLC Pursuant to 28 U.S.C. § 1782 | **Index No.** _____ <br><br> ***Ex Parte* Petition for Assistance in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782** |

**EX PARTE APPLICATION FOR ORDER UNDER 28 U.S.C. § 1782 PERMITTING BLOOMFIELD INVESTMENT RESOURCES CORP. TO ISSUE SUBPOENAS FOR THE TAKING OF A DEPOSITION AND THE PRODUCTION OF DOCUMENTS FROM ELLIOT DANILOFF, ED CAPITAL, LLC AND ED CAPITAL MANAGEMENT, LLC**

Based upon the annexed declaration of Richard T. Marooney, Petitioner Bloomfield

Investment Resources Corp ("Bloomfield" or "Petitioner") hereby applies to this Court *ex parte*

for an Order, pursuant to 28 U.S.C. § 1782, and Rules 26, 30 and 45 of the Federal Rules of Civil

Procedure, granting Petitioner leave to serve Elliot Daniloff, ED Capital, LLC and ED Capital

Management, LLC with subpoenas appended to this Petition in Appendices A, B and C.

Petitioner meets all the statutory criteria for the issuance of an order allowing the

requested discovery.  *See* 28 U.S.C. § 1782.  Moreover, all the discretionary factors that this

Court may consider likewise favor granting this Application.  Petitioner thus respectfully

requests that its Application be granted.  A proposed order has been appended to this Petition as

Appendix D.

## Introduction

1.      Petitioner seeks discovery from Respondents for litigation pending in the

Netherlands.  The Netherlands litigation arises out of a failure by a Russian corporation called

Open Joint Stock Company United Meat Group ("UMG") to repay a $25 million loan made by

Petitioner for the benefit of UMG.  Bloomfield already has obtained an order of attachment from

the Rotterdam District Court attaching UMG's bank account in the Netherlands, and in August

will file a plenary action against UMG to recover the loan.  Bloomfield believes that UMG has

misused or misappropriated the proceeds of its loan.

2.      The proceeds of Petitioner's loan were provided to UMG via off-shore funds

referred to as the Synergy Hybrid Feeder Fund Ltd. and Synergy Hybrid Fund Ltd. (collectively,

"Synergy").  Respondent ED Capital, LLC  is a New York based investment company that is the

investment advisor for Synergy.  Respondent ED Capital Management, LLC is a New York

based investment company that is the investment manager for Synergy.

3.      Respondent Daniloff owns and controls both Respondent ED Capital and

Respondent ED Capital Management.  According to UMG's annual report, Daniloff also is the

controlling party of UMG.  In 2011, Daniloff initiated discussions with and induced Bloomfield

to make the loan that is now the subject of the litigation in The Netherlands.

4.      Respondents possess highly relevant documents and information relating to

Bloomfield's loan, the terms of the loan, timing of repayment, UMG's business operations, the

2

course of dealing between and among Bloomfield, Synergy, Respondents and UMG, UMG's use of Bloomfield's funds and many other issues to be adjudicated in The Netherlands. The documents and information in Respondents' possession should help bring the truth to light, aid the Netherlands courts in resolving the issues, and ultimately assist Bloomfield in getting its money back.

### The Parties and Other Relevant Entities

5.      Petitioner is a British Virgin Island company forming part of the Reuben Brothers group ("Reuben Brothers"). The founders of Reuben Brothers are the businessmen and philanthropists David and Simon Reuben.

6.      Respondent Elliot Daniloff is a New York resident and U.S. national. He is a director of the Funds. He is also the sole principal of Respondent ED Capital Management, which is the investment manager of Synergy. ED Capital Management has its principal place of business in New York located at 825 Third Avenue, 2nd Floor, New York, NY 10022. Marooney Decl., Ex. A at pp. 1, 20, 21, 59-61.

7.      Additionally, Daniloff is an owner and director of Respondent ED Capital, which is the investment advisor of Synergy. ED Capital has its principal place of business in New York located at 825 Third Avenue, 2nd Floor, New York, NY 10022. Marooney Decl., Ex. A at pp. 1, 25, 59.

8.      UMG is a Russian company founded in 2009 and is in the business of poultry production, grain production and animal feed production. See http://www.unitedmeat.ru/en/about/ (last visited July 19, 2015). Daniloff is the controlling party of UMG.

9.      Bloomfield made its loan  in 2011 through Synergy Hybrid Feeder Fund Ltd., a

3

feeder fund incorporated in the Cayman Islands ("Synergy Feeder Fund").  Marooney Decl., Ex. B at ¶ 2.3.

10.     Synergy Feeder Fund is the majority shareholder in Synergy Hybrid Fund Ltd., also a fund incorporated in the Cayman Islands ("Synergy Master Fund").  Marooney Decl., Ex. B at ¶ 1.3.

11.     Synergy Master Fund is the sole shareholder in UMG.  Marooney Decl., Ex. B at ¶ 1.3.

### The Netherlands Litigation

12.     On June 16, 2015, Bloomfield requested the Rotterdam District Court to levy prejudgment attachment by garnishment of an account held by UMG in Demir-Halk Bank ("DHB") that was under the joint control of UMG and Bloomfield ("the Netherlands Petition").  Marooney Decl., Ex. B.

13.     In the Netherlands Petition, Bloomfield explained that UMG is obligated to repay Bloomfield's loan of $25 million that had become due in November 2013, and that UMG had agreed on a number of occasions over the course of 2014 to repay the loan, ultimately agreeing upon a repayment plan in November 2014.  To put the repayment plan into effect, UMG opened a bank account with Demir-Halk Bank ("DHB") in the Netherlands, and transferred $15 million into the account.  Bloomfield and UMG had agreed that this amount would be used to partially repay the loan to Bloomfield, and that the parties would thereafter agree on the timing of the repayment of the remainder of the loan.  UMG and the shareholders of UMG (namely, Synergy) issued a resolution authorizing a two-signature policy whereby representatives of Bloomfield and UMG both had to agree to any transactions concerning the account.  Marooney Decl., Ex. B at ¶¶ 2.10-2.19.

DMSLIBRARY01\23483\045001\26256919.v1-7/19/15

14.     In May 2015, UMG made a partial repayment of the loan in the amount of $2 million to Bloomfield.  Marooney Decl., Ex. B at ¶ 2.17.

15.     On June 2, 2015, UMG requested DHB to terminate the two-signature policy, and unilaterally sought to transfer $2.9 million out of the account without obtaining Bloomfield's consent.   Marooney Decl., Ex. B at ¶¶ 2.18-2.19.

16.     Bloomfield petitioned the Netherlands court to prevent UMG from executing this unauthorized transaction.  Bloomfield also represented that it would pursue legal action against UMG seeking recovery of the unpaid loan.  Marooney Decl., Ex. B at ¶¶ 3.1-3.3.

17.     On June 17, 2015, the Netherlands court granted Bloomfield's request, levying prejudgment attachment of the funds in the account for a period of 28 days.  Marooney Decl., Ex. B at p. 9 (English translation).

18.     Thereafter, on July 2, 2015, UMG petitioned the Netherlands court to lift the attachment (the "UMG Petition").  Marooney Decl., Ex. C.

19.     In the UMG Petition, UMG took the position that UMG was not obligated to repay Bloomfield because Bloomfield had not made a loan to UMG but rather was an indirect shareholder in UMG through its investment in Synergy.  Marooney Decl., Ex. C at ¶¶ 4-15.

20.     UMG petitioned the Netherlands court to lift the attachment in full and provide UMG with access to the funds in the account in DHB.  According to UMG, it needed such access to make interest payments owed to holders of bonds issued by UMG Finance B.V., a wholly-owned subsidiary of UMG.  Such payments allegedly had become due on June 22, 2015. Marooney Decl., Ex. C at ¶¶ 17-20, 55-58.

21.     The Netherlands court held a hearing on July 9, 2015, during which the parties presented their respective positions.  The Netherlands court issued a written decision on July 15,

DMSLIBRARY01\23483\045001\26256919.v1-7/19/15

2015 (the "July 15, 2015 Order").  Marooney Decl., Ex. D.

22.     In the July 15, 2015 Order, the Netherlands court kept the attachment secured by Bloomfield on June 17, 2015 in effect, except for the amount of $3.3 million, which would be released to UMG for the sole purpose of paying interest due on certain bonds.  Marooney Decl., Ex. D at Section 5.

23.     In the July 15, 2015 Order, the Netherlands court noted that Bloomfield and UMG disagreed on key factual and legal issues.  Marooney Decl., Ex. D at ¶¶ 4.4-4.6.  However, the Netherlands court observed that the evidence presented provided support for Bloomfield's position that it had loaned $25 million to UMG:

> The statement, or witness statement, and the e-mails submitted by Bloomfield lend support to the view adopted by Bloomfield, that from the very start it had been the express intention of the parties – in the persons of Reuben and Daniloff – that the amount of USD 25,000,000 had been made available as a loan/deposit.  More in particular the extensive and detailed witness statements submitted by Bloomfield point in that direction.

> The report of the meeting of 26 November 2014 and the specific opening of a bank account in the Netherlands further to the agreements that had been made, into which account subsequently USD 15,000,000 was deposited, lend support to Bloomfield's view that UMG had committed itself to repaying USD 25,000,000 to Bloomfield.

> Marooney Decl., Ex. D at ¶ 4.7.4 (English translation).

24.     The Netherlands court also observed that it needed additional evidence to resolve the merits of the dispute, which would be decided during the principal lawsuit brought by Bloomfield against UMG.  The Netherlands court stated:

> In order to be able to decide which party is a right, a further review will be required, with more evidence being furnished by the parties, which will go beyond the scope of these preliminary relief proceedings.  The judge in preliminary relief proceedings does not at all rule out that both the

contents of the 'subscription agreement' and the verbal agreements between Reuben and Daniloff, when viewed in relation to each other, together with the agreements made at a later stage, will in the end be decisive when it comes to answering the question if UMG is under an obligation to repay USD 25,000,000.

Marooney Decl., Ex. D at ¶ 4.7.6 (English translation).

25.     Finally, the Netherlands court denied UMG's requests that Bloomfield be subject to a penalty payment of EUR 5 million per day if it sought new attachments against UMG and that Bloomfield be held liable for the costs of the proceeding.  Marooney Decl., Ex. D at ¶¶ 5.4, 5.6 (English translation).

26.     Bloomfield has been instructed to file its plenary action against UMG on or before August 12, 2015.  Marooney Decl., Ex. E.

**The Discovery Sought**

27.     Each Respondent from whom discovery is sought played an integral role in the procuring of the loan, the transfer of funds to UMG, the subsequent use of funds by UMG, the course of dealing with Bloomfield and the Reuben brothers, and essentially all aspects of the gravamen of the dispute in the Netherlands.  Accordingly, each Respondent possesses documents and information bearing directly upon the issues in the Netherlands litigation.

28.     As set forth in further detail in the subpoenas, Bloomfield seeks document discovery concerning the discussions between and among Daniloff and Bloomfield leading up to the loan; the parties' course of conduct; the parties' agreement that Bloomfield would loan $25 million to UMG, the transfer of the money via the Funds to UMG; the subsequent use of Bloomfield's money; UMG's current financial condition; Respondents' roles as investment manager and advisor of the Funds; Daniloff's role regarding UMG; the parties' more recent discussions concerning timing of the repayment of the loan; Daniloff's communications with

7

UMG regarding the loan and repayment; and other relevant documents and information.

29.     In addition to requests for the production of documents from Respondents, Bloomfield also seeks a deposition of Respondent Daniloff and a corporate representative of both ED Capital Management and ED Capital concerning the subject matters described above and in the subpoenas.

### Petitioners are Entitled to the Discovery Sought Hereby

30.     28 U.S.C. § 1782 provides, in pertinent part, as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal….The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

31.     This Circuit has repeatedly recognized the liberal policy in favor of granting petitions for judicial assistance under Section 1782. *See, e.g.*, *Application of Gianoli Aldunate*, 3 F.3d 54, 57 (2d Cir. 1993) (quoting S. Rep. No. 88-1580, at 7, *reprinted in* 1964 U.S.C.C.A.N. 3782) ("The primary intent of the amendments [to § 1782] was to 'clarif[y] and liberalize . . . existing U.S. procedures for assisting foreign and international tribunals and litigants in obtaining oral and documentary evidence in the United States'"); *Application of Malev Hungarian Airlines*, 964 F.2d 97, 99 (2d Cir. 1992) (stating that § 1782 aimed to "prompt foreign [countries] to follow our generous example and provide similar assistance to our court systems").

32.     Each of the statutory prerequisites for this Court to order discovery in aid of the Netherlands litigation is satisfied. *First*, Bloomfield is an "interested person" within the meaning of 28 U.S.C. § 1782. An interested person under § 1782 is one who has "significant participation

8

rights" in the action.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256-57 (2004). As the Supreme Court noted in *Intel*, "[n]o doubt litigants are included among, and may be the most common example, of the 'interested person[s]' who may invoke § 1782."  542 U.S. at 256. Bloomfield is the plaintiff in the Netherlands litigation, and is thus an "interested person" for the purposes of § 1782.

33.  *Second*, the discovery sought is for use in the Netherlands litigation, which would constitute a "proceeding before a foreign or international tribunal."  The Netherlands court granted Bloomfield's request to attach and freeze the funds in the account jointly controlled by UMG and Bloomfield in Demir-Halk Bank on June 17, 2015, and, following a hearing that took place on July 9, 2015, issued the July 15, 2015 Order keeping the attachment in place except for the amount of $3.3 million.  Bloomfield has been instructed to file its plenary action against UMG by August 12, 2015 regarding repayment of the loan to Bloomfield.   *See* Marooney Decl., Ex. E.  Thus, the filing of the principal action is "within reasonable contemplation," satisfying the requirement that the discovery be sought for use in a foreign proceeding.  *See Intel*, 542 U.S. at 259; *see also Mees v. Buiter*, Case No. 14-1866, 2015 U.S. App. LEXIS 12360, at  **17-18 (2d Cir. July 17, 2015) (a private litigant can seek discovery through § 1782 that will assist in the commencement of the principal action that is "within reasonable contemplation").

34.  *Third*, Respondents Daniloff, ED Capital Management and ED Capital are found in this district.  Daniloff is a resident of New York and is the founder and owner of ED Capital Management and ED Capital.  The principal place of business of both ED Capital Management and ED Capital is New York.   *See* Marooney Decl., Ex. A at 20-21.

35.  Additionally, the discretionary factors that the Court may consider weigh in favor of granting the Petition.  Notably, Respondents Elliot Daniloff, ED Capital and ED Capital

9

Management are not parties to the Dutch proceedings. Thus, this is not a situation where "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).

36.     Bloomfield has no reason to believe that the Netherlands courts would not be receptive to the judicial assistance requested, and the request does not seek to "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. 241 at 264-5 (2004). U.S. courts have granted § 1782 petitions in aid of discovery for proceedings taking place in the Netherlands. *See, e.g., Eco Swiss China Time Ltd. v. Timex Corp.*, 944 F. Supp. 134 (D. Conn. 1996); *Republic of Ecuador v. Hinchee*, 741 F.3d 1185 (11th Cir. 2013).

37.     The Court's grant of judicial assistance would permit Bloomfield to appropriately prosecute its claim against UMG in the Netherlands given that Respondents are in possession of information central to its claim that UMG is in breach of a loan agreement with Bloomfield.

38.     The document requests in the proposed subpoenas are neither unduly burdensome nor intrusive. Bloomfield has tailored its request to seek only those materials relevant to the Netherlands litigation.

39.     Bloomfield thus requests that the Court grant the Petition and authorize Petitioner to issue subpoenas to Elliot Daniloff, ED Capital and ED Capital Management in the form attached hereto as Appendices A, B and C. A proposed order has been appended to this Petition as Appendix D.

## Conclusion

40.     For the reasons set forth herein, Petitioner respectfully requests the Court to issue an Order, pursuant to 28 U.S.C. § 1782, and Rules 26, 30 and 45 of the Federal Rules of Civil

10

Procedure, and in the form of attached Appendix D, granting Petitioner leave to serve Elliot

Daniloff, ED Capital, LLC and ED Capital Management, LLC with subpoenas appended to this

Petition in Appendices A, B and C.


Dated: New York, New York
       July 22, 2015


_____
Richard T. Marooney
Viren Mascarenhas
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
(212) 556-2202
rmarooney@kslaw.com
vmascarenhas@kslaw.com

*Attorneys for Petitioner*
*Bloomfield Investment Resources Corp.*

11

# APPENDIX A

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | |
|---|---|
| In re Application of Bloomfield Investment Resources Corp. for an Order Directing Discovery from Elliot Daniloff, ED Capital, LLC and ED Capital Management, LLC Pursuant to 28 U.S.C. § 1782 | ) ) ) ) )  Civil Action No. |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                    Elliot Daniloff

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Attachment A

| Place:  King & Spalding LLP 1185 Avenue of the Americas New York, NY 10036 | Date and Time: 09/09/2015 10:00 am |
|---|---|

The deposition will be recorded by this method:    stenographic means

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Attachment B

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  7/22/15

| *CLERK OF COURT* | |
|---|---|
|  | OR |
| _____ *Signature of Clerk or Deputy Clerk* | _____ *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Bloomfield Investment Resources Corp. _____ , who issues or requests this subpoena, are:

Richard T. Marooney, King & Spalding LLP, 1185 Avenue of the Americas, New York, NY 10036, rmarooney@kslaw.com (212) 556-2242

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                      *Server's signature*

                                                   _____
                                                         *Printed name and title*

                                                   _____
                                                         *Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

### ATTACHMENT A

### DOCUMENTS TO BE PRODUCED

### DEFINITIONS

1.     The uniform definitions set forth in Rule 26.3 of the Local Civil Rules of the
Southern District of New York shall apply herein.

2.     The phrase "related to" shall mean in relation to, related to, or consisting of,
referring to, reflecting, concerning, discussing, evidencing, commenting on, supporting,
contradicting or having any logical or factual connection with the matter identified, in whole or
in part.

3.     The phrase "you or your" shall mean and includes yourself and all persons acting
in your interest or on your instructions or assisting you, including without limitation your agents,
servants, and representatives, including attorneys, accountants, auditors, contractors and
consultants.

4.     UMG shall mean Open Joint Stock Company "United Meat Group," a legal entity
incorporated and existing under the laws of the Russian Federation, with registration number
(OGRN) 1097746821655 with registered office in Belorechenskaya Street, building 36-3,
109387, Moscow, Russian Federation.

5.     UMG Finance B.V. shall mean the investment vehicle of UMG, a legal entity
incorporated in The Netherlands with its registered office at Veembroederhof 281, 1019 HD
Amsterdam, The Netherlands.

6.     Bloomfield shall mean Bloomfield Investment Resources Corp., a legal entity
incorporated and existing under the laws of the British Virgin Islands, registration number
1668690, with registered office in Wickham's Cay II, Coastal building, Road Town, Tortola,

British Virgin Islands.

7.      Synergy Feeder Fund shall mean Synergy Hybrid Feeder Fund, Ltd., incorporated in the Cayman Islands, with registered offices at Turner & Roulstone Management Ltd., Strathvale House, 90 North Church Street, P.O. Box 2636, Grand Cayman, KY1-1102, Cayman Islands.

8.      Synergy Master Fund shall mean Synergy Hybrid Fund Ltd., incorporated in the Cayman Islands, with registered offices at Apex Fund Services (Cayman) Ltd., P.O. Box MP10085, Unit 5-202, Governor's Square, West Bay Road, Grand Cayman, Cayman Islands.

9.      Elliot Daniloff or Daniloff shall mean Mr. Elliot Daniloff, who is the founder and director of ED Capital Management, LLC.

10.     ED Capital Management, LLC shall mean ED Capital Management, LLC, an investment adviser firm with SEC registration number 801-73835 and with principal place of business at 825 Third Avenue, 2nd Floor, New York, NY, 10022.

11.     ED Capital, LLC shall mean ED Capital, LLC, an investment adviser firm with principal business of business at 825 Third Avenue, 2nd Floor, New York, 10022.

12.     Respondents shall mean Elliot Daniloff, ED Capital Management, LLC and ED Capital, LLC, collectively.

## INSTRUCTIONS

The following instructions shall govern the response and production of documents:

1.      Unless otherwise noted, these document requests cover the period from July 1, 2011 through the present.

2.      Each request for documents extends to all documents in your possession, custody or control, whether held by you or your past or present attorneys or agents and regardless of the

2

location of the document(s).  You are required to produce documents that you have a legal right to obtain, documents that you have the right to copy or have access to, and documents that you have placed in the temporary possession, custody or control of a third party.

3.     In the event that any document called for by these Document Requests is withheld on the basis of a claim of privilege, that document is to be identified in a privilege log as follows: author(s), addressee(s), indicated or blind copy recipient(s), date, subject matter, number of pages, attachments or appendices, all persons to whom distributed, shown or explained, the present custodian, and the nature of the privilege asserted.

4.     In the event that any document called for by these Document Requests has been destroyed, discarded, otherwise disposed of, or no longer exists, that document is to be identified as completely as possible, including, without limitation, the following information:  author(s), addressee(s), indicated or blind copy recipient(s), date, subject matter, date of disposal, reason for disposal, person authorizing the disposal, and the person disposing of the document and identify its last known location and the reason it is no longer in existence.

5.     In the event that any information is redacted from a document produced pursuant to these Document Requests, that information is to be identified and the basis upon which such information is redacted should be fully stated.

6.     In the event that multiple copies or versions of a document exist, produce all non-identical copies of the document, including any and all drafts of the document.

7.     At the time and place of production of the documents requested herein, the documents requested are to be produced in the same order as maintained in the ordinary course of business.

8.     For each document produced, identify the specific Document Request category to

3

which it is responsive.

9.      As used herein, the singular form of a word shall be interpreted to include the plural form and the plural form shall be interpreted to include the singular whenever appropriate in order to bring within the scope of this request any documents which might otherwise be considered to be beyond its scope.

10.     The word including shall be construed without limitation wherever used herein.

11.     The past tense of a verb used herein shall include the present tense, and the present tense shall include the past tense.

12.     The originals of all documents requested herein shall be produced for inspection and copying at the time, date, and location provided in the Subpoena to which this Exhibit A is attached.  In lieu of producing the originals of all documents requested herein for inspection and copying, you may produce a forensically identical copy of such documents at the time, date, and location provided in the Subpoena to which this Exhibit A is attached.

## DOCUMENTS TO BE PRODUCED

1.      Any and all documents concerning Bloomfield, the Reuben brothers, and RB Capital.

2.      Any and all documents reflecting communications by and between Daniloff and anyone on his behalf and the Reuben brothers, Bloomfield, RB Capital or anyone on their behalf.

3.      Any and all documents concerning negotiations of the terms of the $25 million transfer of funds from Bloomfield, including but not limited to negotiations concerning the timing of repayment.

4.      Any and all documents reflecting communications by and between Respondents and the Funds regarding Bloomfield, the Reuben brothers, RB Capital or UMG.

4

5.      Any and all documents relating to UMG

6.      Any and all documents relating to the 2011 transfer of funds from Bloomfield to a
bank account of Synergy Master Fund.

7.      Any and all documents relating to the use of the $25 million after it was
transferred in 2011 from Bloomfield to a bank account of Synergy Master Fund.

8.      Any and all documents concerning the transfer of the $25 million out of the
Synergy Master Fund's account to an account in Europe or Russia for the benefit of UMG.

9.      Any and all documents relating to the current status of the $25 million transfer
from Bloomfield.

10.     Any and all documents relating to the Subscription Agreement signed by
Bloomfield and Synergy Master Fund in November 2011.

11.     Any and all documents relating to repaying to Bloomfield all or part of the $25
million Bloomfield transferred in 2011.

12.     Any and all documents relating to any pledge of UMG assets.

13.     Any and all documents relating to the pledge of the shares of Synergy Feeder
Fund and Synergy Master Fund in UMG.

14.     Any and all documents relating to Daniloff's other business interests in Russia to
the extent those interests also relate to UMG, including but not limited to any and all documents
relating to any pledge of UMG assets for the benefit of financing any other business interest of
Daniloff in Russia.

15.     Any and all documents relating to the decisions by Respondents to transfer or
invest all or part of the $25 million transferred by Bloomfield to a bank account held by Synergy
Master Fund on or about November 9, 2011, including without limitation transferring or

5

investing the money to or in UMG.

    16.    Any and all documents relating to communications between Respondents, UMG and/or representatives of Bloomfield regarding repayment of all or part of the USD 25 million that took place in October 2014-June 2015.

    17.    Any and all documents relating to the deposit of funds in a bank account held by UMG in Demir-Halk Bank in The Netherlands.

    18.    Any and all documents relating to the use or proposed use of funds in a bank account held by UMG in Demir-Halk Bank in The Netherlands.

    19.    Any and all documents relating to the bank account held by UMG in Demir-Halk Bank in The Netherlands.

    20.    Any and all documents relating to the partial repayment made by UMG of the amount of $2 million to Bloomfield made in May 2015.

    21.    Any and all documents concerning any fees or compensation paid to Daniloff concerning the Funds or UMG.

    22.    Any and all documents concerning any fees or compensation paid to ED Capital Management, LLC and ED Capital, LLC concerning the Funds or UMG.

    23.    All tax returns of Daniloff filed from 2011 to 2015.

**ATTACHMENT B**

**DEFINITIONS**

1.    The uniform definitions set forth in Rule 26.3 of the Local Civil Rules of the Southern District of New York shall apply herein.

2.    The phrase "related to" shall mean in relation to, related to, or consisting of, referring to, reflecting, concerning, discussing, evidencing, commenting on, supporting, contradicting or having any logical or factual connection with the matter identified, in whole or in part.

3.    The phrase "you or your" shall mean and includes yourself and all persons acting in your interest or on your instructions or assisting you, including without limitation your agents, servants, and representatives, including attorneys, accountants, auditors, contractors and consultants.

4.    UMG shall mean Open Joint Stock Company "United Meat Group," a legal entity incorporated and existing under the laws of the Russian Federation, with registration number (OGRN) 1097746821655 with registered office in Belorechenskaya Street, building 36-3, 109387, Moscow, Russian Federation.

5.    UMG Finance B.V. shall mean the investment vehicle of UMG, a legal entity incorporated in The Netherlands with its registered office at Veembroederhof 281, 1019 HD Amsterdam, The Netherlands.

6.    Bloomfield shall mean Bloomfield Investment Resources Corp., a legal entity incorporated and existing under the laws of the British Virgin Islands, registration number 1668690, with registered office in Wickham's Cay II, Coastal building, Road Town, Tortola, British Virgin Islands.

7

7.      Synergy Feeder Fund shall mean Synergy Hybrid Feeder Fund, Ltd., incorporated in the Cayman Islands, with registered offices at Turner & Roulstone Management Ltd., Strathvale House, 90 North Church Street, P.O. Box 2636, Grand Cayman, KY1-1102, Cayman Islands.

8.      Synergy Master Fund shall mean Synergy Hybrid Fund Ltd., incorporated in the Cayman Islands, with registered offices at Apex Fund Services (Cayman) Ltd., P.O. Box MP10085, Unit 5-202, Governor's Square, West Bay Road, Grand Cayman, Cayman Islands.

9.      Elliot Daniloff or Daniloff shall mean Mr. Elliot Daniloff, who is the founder and director of ED Capital Management, LLC.

10.      ED Capital Management, LLC shall mean ED Capital Management, LLC, an investment adviser firm with SEC registration number 801-73835 and with principal place of business at 825 Third Avenue, 2nd Floor, New York, NY, 10022.

11.      ED Capital, LLC shall mean ED Capital, LLC, an investment adviser firm with principal business of business at 825 Third Avenue, 2nd Floor, New York, 10022.

12.      Respondents shall mean Elliot Daniloff, ED Capital Management, LLC and ED Capital, LLC, collectively.

### Instructions

1.      Unless otherwise noted, these areas of designation and inquiry cover the period from July 1, 2011 through the date and time that the deposition record is closed.

2.      The word "including" shall be construed without limitation wherever used herein.

3.      The singular of a noun used herein shall include the plural, and the plural shall include the singular.

4.      The past tense of a verb used herein shall include the present tense, and the

8

present tense shall include the past tense.

## Areas of Designation and Inquiry

1.    Relationship between Respondents and Bloomfield, the Reuben brothers and RB Capital.

2.    Communications by and between Daniloff and anyone on his behalf and the Reuben brothers, Bloomfield, RB Capital or anyone on their behalf.

3.    The terms of the $25 million transfer of funds from Bloomfield, including but not limited to negotiations concerning the terms of the transfer and timing of repayment.

4.    Communications by and between Respondents and the Funds regarding Bloomfield, the Reuben brothers, RB Capital or UMG.

5.    Current financial and operating status of UMG.

6.    The 2011 transfer of funds from Bloomfield to a bank account of Synergy Master Fund.

7.    The use of the $25 million after it was transferred in 2011 from Bloomfield to a bank account of Synergy Master Fund.

8.    The transfer of the $25 million out of the Synergy Master Fund's account to an account in Europe or Russia for the benefit of UMG.

9.    The current status of the $25 million transfer from Bloomfield.

10.    The Subscription Agreement signed by Bloomfield and Synergy Master Fund in November 2011.

11.    Repayment to Bloomfield of all or part of the $25 million Bloomfield transferred in 2011.

12.    Any pledge of UMG assets.

9

13.     Any pledge of the shares of Synergy Feeder Fund and Synergy Master Fund in UMG.

14.     Respondents' other business interests in Russia to the extent those interests also relate to UMG, including but not limited to any and all documents relating to any pledge of UMG assets for the benefit of financing any other business interest of Daniloff in Russia.

15.     The investment or transfer of the $25 million deposited by Bloomfield in a bank account held by Synergy Master Fund on November 9, 2011.

16.     Communications between Respondents, UMG and/or representatives of Bloomfield regarding repayment of all or part of the USD 25 million that took place in October 2014-June 2015.

17.     The deposit of funds in a bank account held by UMG in Demir-Halk Bank in The Netherlands.

18.     The use or proposed use of funds in a bank account held by UMG in Demir-Halk Bank in The Netherlands.

19.     The bank account held by UMG in Demir-Halk Bank in The Netherlands.

20.     The partial repayment made by UMG of the amount of $2 million to Bloomfield made in May 2015.

21.     Fees or compensation paid to Daniloff concerning the Funds or UMG.

22.     Fees or compensation paid to ED Capital Management, LLC and ED Capital, LLC concerning the Funds or UMG.

23.     Tax returns of Daniloff filed from 2011 to 2015.

DMSLIBRARY01\23483\045001\26257256.v1-7/19/15

# APPENDIX B

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

## for the

Southern District of New York

In re Application of Bloomfield Investment Resources )
Corp. for an Order Directing Discovery from Elliot )
Daniloff, ED Capital, LLC and ED Capital )    Civil Action No.
Management, LLC Pursuant to 28 U.S.C. § 1782 )
)

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                    ED Capital, LLC
_____
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See Attachment A

| Place: King & Spalding LLP<br>1185 Avenue of the Americas<br>New York, NY 10036 | Date and Time:<br>09/16/2015 10:00 am |
|---|---|

The deposition will be recorded by this method:   stenographic means

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Attachment B

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 7/22/15

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Bloomfield
Investment Resources Corp.   _____ , who issues or requests this subpoena, are:

Richard T. Marooney, King & Spalding LLP, 1185 Avenue of the Americas, New York, NY 10036, rmarooney@kslaw.com
(212) 556-2242

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____          on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____   for travel and $ _____   for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    (i) disclosing a trade secret or other confidential research, development, or commercial information; or
    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:

  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

## DOCUMENTS TO BE PRODUCED

### DEFINITIONS

1.    The uniform definitions set forth in Rule 26.3 of the Local Civil Rules of the Southern District of New York shall apply herein.

2.    The phrase "related to" shall mean in relation to, related to, or consisting of, referring to, reflecting, concerning, discussing, evidencing, commenting on, supporting, contradicting or having any logical or factual connection with the matter identified, in whole or in part.

3.    The phrase "you or your" shall mean and includes yourself and all persons acting in your interest or on your instructions or assisting you, including without limitation your agents, servants, and representatives, including attorneys, accountants, auditors, contractors and consultants.

4.    UMG shall mean Open Joint Stock Company "United Meat Group," a legal entity incorporated and existing under the laws of the Russian Federation, with registration number (OGRN) 1097746821655 with registered office in Belorechenskaya Street, building 36-3, 109387, Moscow, Russian Federation.

5.    UMG Finance B.V. shall mean the investment vehicle of UMG, a legal entity incorporated in The Netherlands with its registered office at Veembroederhof 281, 1019 HD Amsterdam, The Netherlands.

6.    Bloomfield shall mean Bloomfield Investment Resources Corp., a legal entity incorporated and existing under the laws of the British Virgin Islands, registration number 1668690, with registered office in Wickham's Cay II, Coastal building, Road Town, Tortola,

British Virgin Islands.

7.      Synergy Feeder Fund shall mean Synergy Hybrid Feeder Fund, Ltd., incorporated in the Cayman Islands, with registered offices at Turner & Roulstone Management Ltd., Strathvale House, 90 North Church Street, P.O. Box 2636, Grand Cayman, KY1-1102, Cayman Islands.

8.      Synergy Master Fund shall mean Synergy Hybrid Fund Ltd., incorporated in the Cayman Islands, with registered offices at Apex Fund Services (Cayman) Ltd., P.O. Box MP10085, Unit 5-202, Governor's Square, West Bay Road, Grand Cayman, Cayman Islands.

9.      Elliot Daniloff or Daniloff shall mean Mr. Elliot Daniloff, who is the founder and director of ED Capital Management, LLC.

10.     ED Capital Management, LLC shall mean ED Capital Management, LLC, an investment adviser firm with SEC registration number 801-73835 and with principal place of business at 825 Third Avenue, 2nd Floor, New York, NY, 10022.

11.     ED Capital, LLC shall mean ED Capital, LLC, an investment adviser firm with principal business of business at 825 Third Avenue, 2nd Floor, New York, 10022.

12.     Respondents shall mean Elliot Daniloff, ED Capital Management, LLC and ED Capital, LLC, collectively.

## INSTRUCTIONS

The following instructions shall govern the response and production of documents:

1.      Unless otherwise noted, these document requests cover the period from July 1, 2011 through the present.

2.      Each request for documents extends to all documents in your possession, custody or control, whether held by you or your past or present attorneys or agents and regardless of the

2

location of the document(s).  You are required to produce documents that you have a legal right to obtain, documents that you have the right to copy or have access to, and documents that you have placed in the temporary possession, custody or control of a third party.

3.      In the event that any document called for by these Document Requests is withheld on the basis of a claim of privilege, that document is to be identified in a privilege log as follows: author(s), addressee(s), indicated or blind copy recipient(s), date, subject matter, number of pages, attachments or appendices, all persons to whom distributed, shown or explained, the present custodian, and the nature of the privilege asserted.

4.      In the event that any document called for by these Document Requests has been destroyed, discarded, otherwise disposed of, or no longer exists, that document is to be identified as completely as possible, including, without limitation, the following information:  author(s), addressee(s), indicated or blind copy recipient(s), date, subject matter, date of disposal, reason for disposal, person authorizing the disposal, and the person disposing of the document and identify its last known location and the reason it is no longer in existence.

5.      In the event that any information is redacted from a document produced pursuant to these Document Requests, that information is to be identified and the basis upon which such information is redacted should be fully stated.

6.      In the event that multiple copies or versions of a document exist, produce all non-identical copies of the document, including any and all drafts of the document.

7.      At the time and place of production of the documents requested herein, the documents requested are to be produced in the same order as maintained in the ordinary course of business.

8.      For each document produced, identify the specific Document Request category to

3

which it is responsive.

9.     As used herein, the singular form of a word shall be interpreted to include the plural form and the plural form shall be interpreted to include the singular whenever appropriate in order to bring within the scope of this request any documents which might otherwise be considered to be beyond its scope.

10.     The word including shall be construed without limitation wherever used herein.

11.     The past tense of a verb used herein shall include the present tense, and the present tense shall include the past tense.

12.     The originals of all documents requested herein shall be produced for inspection and copying at the time, date, and location provided in the Subpoena to which this Exhibit A is attached. In lieu of producing the originals of all documents requested herein for inspection and copying, you may produce a forensically identical copy of such documents at the time, date, and location provided in the Subpoena to which this Exhibit A is attached.

## DOCUMENTS TO BE PRODUCED

1.     Any and all documents concerning Bloomfield, the Reuben brothers, and RB Capital.

2.     Any and all documents reflecting communications by and between Daniloff and anyone on his behalf and the Reuben brothers, Bloomfield, RB Capital or anyone on their behalf.

3.     Any and all documents concerning negotiations of the terms of the $25 million transfer of funds from Bloomfield, including but not limited to negotiations concerning the timing of repayment.

4.     Any and all documents reflecting communications by and between Respondents and the Funds regarding Bloomfield, the Reuben brothers, RB Capital or UMG.

4

5.      Any and all documents relating to UMG

6.      Any and all documents relating to the 2011 transfer of funds from Bloomfield to a bank account of Synergy Master Fund.

7.      Any and all documents relating to the use of the $25 million after it was transferred in 2011 from Bloomfield to a bank account of Synergy Master Fund.

8.      Any and all documents concerning the transfer of the $25 million out of the Synergy Master Fund's account to an account in Europe or Russia for the benefit of UMG.

9.      Any and all documents relating to the current status of the $25 million transfer from Bloomfield.

10.     Any and all documents relating to the Subscription Agreement signed by Bloomfield and Synergy Master Fund in November 2011.

11.     Any and all documents relating to repaying to Bloomfield all or part of the $25 million Bloomfield transferred in 2011.

12.     Any and all documents relating to any pledge of UMG assets.

13.     Any and all documents relating to the pledge of the shares of Synergy Feeder Fund and Synergy Master Fund in UMG.

14.     Any and all documents relating to Daniloff's other business interests in Russia to the extent those interests also relate to UMG, including but not limited to any and all documents relating to any pledge of UMG assets for the benefit of financing any other business interest of Daniloff in Russia.

15.     Any and all documents relating to the decisions by Respondents to transfer or invest all or part of the $25 million transferred by Bloomfield to a bank account held by Synergy Master Fund on or about November 9, 2011, including without limitation transferring or

5

DMSLIBRARY01\23483\045001\26257256.v1-7/19/15

investing the money to or in UMG.

16.     Any and all documents relating to communications between Respondents, UMG and/or representatives of Bloomfield regarding repayment of all or part of the USD 25 million that took place in October 2014-June 2015.

17.     Any and all documents relating to the deposit of funds in a bank account held by UMG in Demir-Halk Bank in The Netherlands.

18.     Any and all documents relating to the use or proposed use of funds in a bank account held by UMG in Demir-Halk Bank in The Netherlands.

19.     Any and all documents relating to the bank account held by UMG in Demir-Halk Bank in The Netherlands.

20.     Any and all documents relating to the partial repayment made by UMG of the amount of $2 million to Bloomfield made in May 2015.

21.     Any and all documents concerning any fees or compensation paid to Daniloff concerning the Funds or UMG.

22.     Any and all documents concerning any fees or compensation paid to ED Capital Management, LLC and ED Capital, LLC concerning the Funds or UMG.

23.     All tax returns of Daniloff filed from 2011 to 2015.

DMSLIBRARY01\23483\045001\26257256.v1-7/19/15

## ATTACHMENT B

### DEFINITIONS

1.      The uniform definitions set forth in Rule 26.3 of the Local Civil Rules of the Southern District of New York shall apply herein.

2.      The phrase "related to" shall mean in relation to, related to, or consisting of, referring to, reflecting, concerning, discussing, evidencing, commenting on, supporting, contradicting or having any logical or factual connection with the matter identified, in whole or in part.

3.      The phrase "you or your" shall mean and includes yourself and all persons acting in your interest or on your instructions or assisting you, including without limitation your agents, servants, and representatives, including attorneys, accountants, auditors, contractors and consultants.

4.      UMG shall mean Open Joint Stock Company "United Meat Group," a legal entity incorporated and existing under the laws of the Russian Federation, with registration number (OGRN) 1097746821655 with registered office in Belorechenskaya Street, building 36-3, 109387, Moscow, Russian Federation.

5.      UMG Finance B.V. shall mean the investment vehicle of UMG, a legal entity incorporated in The Netherlands with its registered office at Veembroederhof 281, 1019 HD Amsterdam, The Netherlands.

6.      Bloomfield shall mean Bloomfield Investment Resources Corp., a legal entity incorporated and existing under the laws of the British Virgin Islands, registration number 1668690, with registered office in Wickham's Cay II, Coastal building, Road Town, Tortola, British Virgin Islands.

7

7. Synergy Feeder Fund shall mean Synergy Hybrid Feeder Fund, Ltd., incorporated in the Cayman Islands, with registered offices at Turner & Roulstone Management Ltd., Strathvale House, 90 North Church Street, P.O. Box 2636, Grand Cayman, KY1-1102, Cayman Islands.

8. Synergy Master Fund shall mean Synergy Hybrid Fund Ltd., incorporated in the Cayman Islands, with registered offices at Apex Fund Services (Cayman) Ltd., P.O. Box MP10085, Unit 5-202, Governor's Square, West Bay Road, Grand Cayman, Cayman Islands.

9. Elliot Daniloff or Daniloff shall mean Mr. Elliot Daniloff, who is the founder and director of ED Capital Management, LLC.

10. ED Capital Management, LLC shall mean ED Capital Management, LLC, an investment adviser firm with SEC registration number 801-73835 and with principal place of business at 825 Third Avenue, 2nd Floor, New York, NY, 10022.

11. ED Capital, LLC shall mean ED Capital, LLC, an investment adviser firm with principal business of business at 825 Third Avenue, 2nd Floor, New York, 10022.

12. Respondents shall mean Elliot Daniloff, ED Capital Management, LLC and ED Capital, LLC, collectively.

**Instructions**

1. Unless otherwise noted, these areas of designation and inquiry cover the period from July 1, 2011 through the date and time that the deposition record is closed.

2. The word "including" shall be construed without limitation wherever used herein.

3. The singular of a noun used herein shall include the plural, and the plural shall include the singular.

4. The past tense of a verb used herein shall include the present tense, and the

8

present tense shall include the past tense.

## Areas of Designation and Inquiry

1.    Relationship between Respondents and Bloomfield, the Reuben brothers and RB Capital.

2.    Communications by and between Daniloff and anyone on his behalf and the Reuben brothers, Bloomfield, RB Capital or anyone on their behalf.

3.    The terms of the $25 million transfer of funds from Bloomfield, including but not limited to negotiations concerning the terms of the transfer and timing of repayment.

4.    Communications by and between Respondents and the Funds regarding Bloomfield, the Reuben brothers, RB Capital or UMG.

5.    Current financial and operating status of UMG.

6.    The 2011 transfer of funds from Bloomfield to a bank account of Synergy Master Fund.

7.    The use of the $25 million after it was transferred in 2011 from Bloomfield to a bank account of Synergy Master Fund.

8.    The transfer of the $25 million out of the Synergy Master Fund's account to an account in Europe or Russia for the benefit of UMG.

9.    The current status of the $25 million transfer from Bloomfield.

10.   The Subscription Agreement signed by Bloomfield and Synergy Master Fund in November 2011.

11.   Repayment to Bloomfield of all or part of the $25 million Bloomfield transferred in 2011.

12.   Any pledge of UMG assets.

9

13.    Any pledge of the shares of Synergy Feeder Fund and Synergy Master Fund in UMG.

14.    Respondents' other business interests in Russia to the extent those interests also relate to UMG, including but not limited to any and all documents relating to any pledge of UMG assets for the benefit of financing any other business interest of Daniloff in Russia.

15.    The investment or transfer of the $25 million deposited by Bloomfield in a bank account held by Synergy Master Fund on November 9, 2011.

16.    Communications between Respondents, UMG and/or representatives of Bloomfield regarding repayment of all or part of the USD 25 million that took place in October 2014-June 2015.

17.    The deposit of funds in a bank account held by UMG in Demir-Halk Bank in The Netherlands.

18.    The use or proposed use of funds in a bank account held by UMG in Demir-Halk Bank in The Netherlands.

19.    The bank account held by UMG in Demir-Halk Bank in The Netherlands.

20.    The partial repayment made by UMG of the amount of $2 million to Bloomfield made in May 2015.

21.    Fees or compensation paid to Daniloff concerning the Funds or UMG.

22.    Fees or compensation paid to ED Capital Management, LLC and ED Capital, LLC concerning the Funds or UMG.

23.    Tax returns of Daniloff filed from 2011 to 2015.

# APPENDIX C

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | | |
|---|---|---|
| In re Application of Bloomfield Investment Resources Corp. for an Order Directing Discovery from Elliot Daniloff, ED Capital, LLC and ED Capital Management, LLC Pursuant to 28 U.S.C. § 1782 | ) ) ) ) ) | Civil Action No. |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                          ED Capital Management, LLC

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Attachment A

| Place: King & Spalding LLP<br>1185 Avenue of the Americas<br>New York, NY 10036 | Date and Time:<br>09/23/2015 10:00 am |
|---|---|

The deposition will be recorded by this method:   stenographic means

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Attachment B

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 7/22/15

| *CLERK OF COURT* | OR | |
|---|---|---|
| _____<br>*Signature of Clerk or Deputy Clerk* | | _____<br>*Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Bloomfield Investment Resources Corp. _____ , who issues or requests this subpoena, are:

Richard T. Marooney, King & Spalding LLP, 1185 Avenue of the Americas, New York, NY 10036, rmarooney@kslaw.com (212) 556-2242

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

    ❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____  on *(date)* _____ ; or

    ❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

    $ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____  _____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i) is a party or a party's officer; or
      (ii) is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      (i) fails to allow a reasonable time to comply;
      (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      (i) disclosing a trade secret or other confidential research, development, or commercial information; or
      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

## DOCUMENTS TO BE PRODUCED

### DEFINITIONS

1.      The uniform definitions set forth in Rule 26.3 of the Local Civil Rules of the Southern District of New York shall apply herein.

2.      The phrase "related to" shall mean in relation to, related to, or consisting of, referring to, reflecting, concerning, discussing, evidencing, commenting on, supporting, contradicting or having any logical or factual connection with the matter identified, in whole or in part.

3.      The phrase "you or your" shall mean and includes yourself and all persons acting in your interest or on your instructions or assisting you, including without limitation your agents, servants, and representatives, including attorneys, accountants, auditors, contractors and consultants.

4.      UMG shall mean Open Joint Stock Company "United Meat Group," a legal entity incorporated and existing under the laws of the Russian Federation, with registration number (OGRN) 1097746821655 with registered office in Belorechenskaya Street, building 36-3, 109387, Moscow, Russian Federation.

5.      UMG Finance B.V. shall mean the investment vehicle of UMG, a legal entity incorporated in The Netherlands with its registered office at Veembroederhof 281, 1019 HD Amsterdam, The Netherlands.

6.      Bloomfield shall mean Bloomfield Investment Resources Corp., a legal entity incorporated and existing under the laws of the British Virgin Islands, registration number 1668690, with registered office in Wickham's Cay II, Coastal building, Road Town, Tortola,

British Virgin Islands.

7.      Synergy Feeder Fund shall mean Synergy Hybrid Feeder Fund, Ltd., incorporated in the Cayman Islands, with registered offices at Turner & Roulstone Management Ltd., Strathvale House, 90 North Church Street, P.O. Box 2636, Grand Cayman, KY1-1102, Cayman Islands.

8.      Synergy Master Fund shall mean Synergy Hybrid Fund Ltd., incorporated in the Cayman Islands, with registered offices at Apex Fund Services (Cayman) Ltd., P.O. Box MP10085, Unit 5-202, Governor's Square, West Bay Road, Grand Cayman, Cayman Islands.

9.      Elliot Daniloff or Daniloff shall mean Mr. Elliot Daniloff, who is the founder and director of ED Capital Management, LLC.

10.     ED Capital Management, LLC shall mean ED Capital Management, LLC, an investment adviser firm with SEC registration number 801-73835 and with principal place of business at 825 Third Avenue, 2nd Floor, New York, NY, 10022.

11.     ED Capital, LLC shall mean ED Capital, LLC, an investment adviser firm with principal business of business at 825 Third Avenue, 2nd Floor, New York, 10022.

12.     Respondents shall mean Elliot Daniloff, ED Capital Management, LLC and ED Capital, LLC, collectively.

## INSTRUCTIONS

The following instructions shall govern the response and production of documents:

1.      Unless otherwise noted, these document requests cover the period from July 1, 2011 through the present.

2.      Each request for documents extends to all documents in your possession, custody or control, whether held by you or your past or present attorneys or agents and regardless of the

2

location of the document(s). You are required to produce documents that you have a legal right to obtain, documents that you have the right to copy or have access to, and documents that you have placed in the temporary possession, custody or control of a third party.

3.     In the event that any document called for by these Document Requests is withheld on the basis of a claim of privilege, that document is to be identified in a privilege log as follows: author(s), addressee(s), indicated or blind copy recipient(s), date, subject matter, number of pages, attachments or appendices, all persons to whom distributed, shown or explained, the present custodian, and the nature of the privilege asserted.

4.     In the event that any document called for by these Document Requests has been destroyed, discarded, otherwise disposed of, or no longer exists, that document is to be identified as completely as possible, including, without limitation, the following information:  author(s), addressee(s), indicated or blind copy recipient(s), date, subject matter, date of disposal, reason for disposal, person authorizing the disposal, and the person disposing of the document and identify its last known location and the reason it is no longer in existence.

5.     In the event that any information is redacted from a document produced pursuant to these Document Requests, that information is to be identified and the basis upon which such information is redacted should be fully stated.

6.     In the event that multiple copies or versions of a document exist, produce all non-identical copies of the document, including any and all drafts of the document.

7.     At the time and place of production of the documents requested herein, the documents requested are to be produced in the same order as maintained in the ordinary course of business.

8.     For each document produced, identify the specific Document Request category to

3

which it is responsive.

9.      As used herein, the singular form of a word shall be interpreted to include the plural form and the plural form shall be interpreted to include the singular whenever appropriate in order to bring within the scope of this request any documents which might otherwise be considered to be beyond its scope.

10.     The word including shall be construed without limitation wherever used herein.

11.     The past tense of a verb used herein shall include the present tense, and the present tense shall include the past tense.

12.     The originals of all documents requested herein shall be produced for inspection and copying at the time, date, and location provided in the Subpoena to which this Exhibit A is attached.  In lieu of producing the originals of all documents requested herein for inspection and copying, you may produce a forensically identical copy of such documents at the time, date, and location provided in the Subpoena to which this Exhibit A is attached.

## DOCUMENTS TO BE PRODUCED

1.      Any and all documents concerning Bloomfield, the Reuben brothers, and RB Capital.

2.      Any and all documents reflecting communications by and between Daniloff and anyone on his behalf and the Reuben brothers, Bloomfield, RB Capital or anyone on their behalf.

3.      Any and all documents concerning negotiations of the terms of the $25 million transfer of funds from Bloomfield, including but not limited to negotiations concerning the timing of repayment.

4.      Any and all documents reflecting communications by and between Respondents and the Funds regarding Bloomfield, the Reuben brothers, RB Capital or UMG.

4

5.     Any and all documents relating to UMG

6.     Any and all documents relating to the 2011 transfer of funds from Bloomfield to a bank account of Synergy Master Fund.

7.     Any and all documents relating to the use of the $25 million after it was transferred in 2011 from Bloomfield to a bank account of Synergy Master Fund.

8.     Any and all documents concerning the transfer of the $25 million out of the Synergy Master Fund's account to an account in Europe or Russia for the benefit of UMG.

9.     Any and all documents relating to the current status of the $25 million transfer from Bloomfield.

10.     Any and all documents relating to the Subscription Agreement signed by Bloomfield and Synergy Master Fund in November 2011.

11.     Any and all documents relating to repaying to Bloomfield all or part of the $25 million Bloomfield transferred in 2011.

12.     Any and all documents relating to any pledge of UMG assets.

13.     Any and all documents relating to the pledge of the shares of Synergy Feeder Fund and Synergy Master Fund in UMG.

14.     Any and all documents relating to Daniloff's other business interests in Russia to the extent those interests also relate to UMG, including but not limited to any and all documents relating to any pledge of UMG assets for the benefit of financing any other business interest of Daniloff in Russia.

15.     Any and all documents relating to the decisions by Respondents to transfer or invest all or part of the $25 million transferred by Bloomfield to a bank account held by Synergy Master Fund on or about November 9, 2011, including without limitation transferring or

5

investing the money to or in UMG.

16.     Any and all documents relating to communications between Respondents, UMG and/or representatives of Bloomfield regarding repayment of all or part of the USD 25 million that took place in October 2014-June 2015.

17.     Any and all documents relating to the deposit of funds in a bank account held by UMG in Demir-Halk Bank in The Netherlands.

18.     Any and all documents relating to the use or proposed use of funds in a bank account held by UMG in Demir-Halk Bank in The Netherlands.

19.     Any and all documents relating to the bank account held by UMG in Demir-Halk Bank in The Netherlands.

20.     Any and all documents relating to the partial repayment made by UMG of the amount of $2 million to Bloomfield made in May 2015.

21.     Any and all documents concerning any fees or compensation paid to Daniloff concerning the Funds or UMG.

22.     Any and all documents concerning any fees or compensation paid to ED Capital Management, LLC and ED Capital, LLC concerning the Funds or UMG.

23.     All tax returns of Daniloff filed from 2011 to 2015.

## ATTACHMENT B

## DEFINITIONS

1.      The uniform definitions set forth in Rule 26.3 of the Local Civil Rules of the Southern District of New York shall apply herein.

2.      The phrase "related to" shall mean in relation to, related to, or consisting of, referring to, reflecting, concerning, discussing, evidencing, commenting on, supporting, contradicting or having any logical or factual connection with the matter identified, in whole or in part.

3.      The phrase "you or your" shall mean and includes yourself and all persons acting in your interest or on your instructions or assisting you, including without limitation your agents, servants, and representatives, including attorneys, accountants, auditors, contractors and consultants.

4.      UMG shall mean Open Joint Stock Company "United Meat Group," a legal entity incorporated and existing under the laws of the Russian Federation, with registration number (OGRN) 1097746821655 with registered office in Belorechenskaya Street, building 36-3, 109387, Moscow, Russian Federation.

5.      UMG Finance B.V. shall mean the investment vehicle of UMG, a legal entity incorporated in The Netherlands with its registered office at Veembroederhof 281, 1019 HD Amsterdam, The Netherlands.

6.      Bloomfield shall mean Bloomfield Investment Resources Corp., a legal entity incorporated and existing under the laws of the British Virgin Islands, registration number 1668690, with registered office in Wickham's Cay II, Coastal building, Road Town, Tortola, British Virgin Islands.

7

7.     Synergy Feeder Fund shall mean Synergy Hybrid Feeder Fund, Ltd., incorporated in the Cayman Islands, with registered offices at Turner & Roulstone Management Ltd., Strathvale House, 90 North Church Street, P.O. Box 2636, Grand Cayman, KY1-1102, Cayman Islands.

8.     Synergy Master Fund shall mean Synergy Hybrid Fund Ltd., incorporated in the Cayman Islands, with registered offices at Apex Fund Services (Cayman) Ltd., P.O. Box MP10085, Unit 5-202, Governor's Square, West Bay Road, Grand Cayman, Cayman Islands.

9.     Elliot Daniloff or Daniloff shall mean Mr. Elliot Daniloff, who is the founder and director of ED Capital Management, LLC.

10.    ED Capital Management, LLC shall mean ED Capital Management, LLC, an investment adviser firm with SEC registration number 801-73835 and with principal place of business at 825 Third Avenue, 2nd Floor, New York, NY, 10022.

11.    ED Capital, LLC shall mean ED Capital, LLC, an investment adviser firm with principal business of business at 825 Third Avenue, 2nd Floor, New York, 10022.

12.    Respondents shall mean Elliot Daniloff, ED Capital Management, LLC and ED Capital, LLC, collectively.

### Instructions

1.     Unless otherwise noted, these areas of designation and inquiry cover the period from July 1, 2011 through the date and time that the deposition record is closed.

2.     The word "including" shall be construed without limitation wherever used herein.

3.     The singular of a noun used herein shall include the plural, and the plural shall include the singular.

4.     The past tense of a verb used herein shall include the present tense, and the

8

present tense shall include the past tense.

## Areas of Designation and Inquiry

1.     Relationship between Respondents and Bloomfield, the Reuben brothers and RB Capital.

2.     Communications by and between Daniloff and anyone on his behalf and the Reuben brothers, Bloomfield, RB Capital or anyone on their behalf.

3.     The terms of the $25 million transfer of funds from Bloomfield, including but not limited to negotiations concerning the terms of the transfer and timing of repayment.

4.     Communications by and between Respondents and the Funds regarding Bloomfield, the Reuben brothers, RB Capital or UMG.

5.     Current financial and operating status of UMG.

6.     The 2011 transfer of funds from Bloomfield to a bank account of Synergy Master Fund.

7.     The use of the $25 million after it was transferred in 2011 from Bloomfield to a bank account of Synergy Master Fund.

8.     The transfer of the $25 million out of the Synergy Master Fund's account to an account in Europe or Russia for the benefit of UMG.

9.     The current status of the $25 million transfer from Bloomfield.

10.     The Subscription Agreement signed by Bloomfield and Synergy Master Fund in November 2011.

11.     Repayment to Bloomfield of all or part of the $25 million Bloomfield transferred in 2011.

12.     Any pledge of UMG assets.

9

13.    Any pledge of the shares of Synergy Feeder Fund and Synergy Master Fund in UMG.

14.    Respondents' other business interests in Russia to the extent those interests also relate to UMG, including but not limited to any and all documents relating to any pledge of UMG assets for the benefit of financing any other business interest of Daniloff in Russia.

15.    The investment or transfer of the $25 million deposited by Bloomfield in a bank account held by Synergy Master Fund on November 9, 2011.

16.    Communications between Respondents, UMG and/or representatives of Bloomfield regarding repayment of all or part of the USD 25 million that took place in October 2014-June 2015.

17.    The deposit of funds in a bank account held by UMG in Demir-Halk Bank in The Netherlands.

18.    The use or proposed use of funds in a bank account held by UMG in Demir-Halk Bank in The Netherlands.

19.    The bank account held by UMG in Demir-Halk Bank in The Netherlands.

20.    The partial repayment made by UMG of the amount of $2 million to Bloomfield made in May 2015.

21.    Fees or compensation paid to Daniloff concerning the Funds or UMG.

22.    Fees or compensation paid to ED Capital Management, LLC and ED Capital, LLC concerning the Funds or UMG.

23.    Tax returns of Daniloff filed from 2011 to 2015.

10

# APPENDIX D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Application of Bloomfield Investment
Resources Corp. for an Order Directing Discovery
from Elliot Daniloff, ED Capital, LLC and ED
Capital Management LLC Pursuant to 28 U.S.C. §
1782

Index No. _____

**Proposed Order**

Upon consideration of the *ex parte* petition for assistance in aid of a foreign proceeding
pursuant to 28 U.S.C. § 1782 (the "Petition") submitted by Petitioner Bloomfield Investment
Resources Corp., and all papers submitted in support thereof, this Court finds that (1) the
statutory requirements of 28 U.S.C. § 1782 are satisfied, and (2) the factors identified by the
United States Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241
(2004), weigh in favor of granting Petitioner's petition.  It is therefore

**ORDERED** that the Petition is granted, and that Petitioner is hereby authorized to serve
this Order, all papers submitted herewith, and the subpoenas annexed to the Petition as Appendix
A, B and C upon Elliot Daniloff, ED Capital, LLC and ED Capital Management, LLC (the
"Respondents") respectively; and it is further

**ORDERED** that the Respondents comply with such subpoenas in accordance with, and
subject to their rights under, the Federal Rules of Civil Procedure and the Rules of this Court;
and it is further

**ORDERED** that this matter will remain assigned to me.

**SO ORDERED.**

Date:  _____ ___, 2015

_____
U.S.D.J.